IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALEA LONDON LIMITED,** | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **65 BOG, INC., d/b/a THE PLACE, and** | : | |
| **VERNON JOSEPH IRVIN,** | : | |
| Defendants | : | NO. 05-1046 |

**MEMORANDUM AND ORDER**

PRATTER, DISTRICT JUDGE                                                                                          APRIL 19, 2006

Plaintiff Alea London Limited ("Alea London") moves for a judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Alea London, a commercial general liability insurer, bases its motion on the argument that it is not obligated to provide a defense to Defendant 65 Bog, Inc., d/b/a The Place ("65 Bog" or "Insured") in connection with an underlying state court action brought against 65 Bog by an injured patron, Vernon Joseph Irvin. In addition to opposing Alea London's motion, 65 Bog moves for partial summary judgment to require Alea London to defend it in the underlying Irvin action. For the reasons discussed more fully below, Alea London's motion for judgment on the pleadings will be granted, and 65 Bog's motion for partial summary judgment will be denied.

**I.   FACTS AND PROCEDURAL HISTORY**

    **A.   The Insurance Policy**

Alea London underwrote a commercial general liability policy of insurance issued to 65 Bog for the period April 24, 2002 to April 24, 2003, bearing Policy No. ALE0150 ("Policy"). The Policy provides coverage limits in the amount of $300,000 per occurrence and in the aggregate. The Policy covers both bodily injury and property damage liability, but limits the

insurer's duty to defend the Insured in suits seeking damages to which the insurance applies, and does not extend the duty to defend to any suit seeking damages to which the insurance does not apply. (Compl. Ex. A at Section I(A)(1)(a)).

As stated in the Policy, the insurance at issue covers only "bodily injury" and "property damage" that is caused by an "occurrence" which takes place in the "coverage territory" during the policy period. (Compl. Ex. A at Section I(A)(1)(b)). The Policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (Compl. Ex. A at Section V(2)). "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Compl. Ex. A at Section V(12)).

The Policy also contains a Combination Endorsement which sets forth an assault and battery exclusion and a punitive damages exclusion. (Compl. Ex. A at 2COMBBPA). The Policy's assault and battery exclusion provides that the insurance policy does not apply to:

> a. "Bodily Injury" or "Property Damage";
> (1) Expected or intended from the standpoint of any insured; or
> (2) Arising out of an assault or battery, provoked or unprovoked, or out of any act or omission in connection with prevention or suppression of an assault or battery, committed by any insured or an employee or agent of the insured.

(Compl. Ex. A at 2COMBBPA). The Policy's punitive damages exclusion provides that:

> This insurance does not apply to any claim of or indemnification for punitive . . . damages. If a suit seeking both compensatory and punitive damages has been brought against you for a cliam [sic] within the coverage provided by this policy, we will provide defense for such action. We will not have any obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages."

(Compl. Ex. A at 2COMBBPA).

**B. The Underlying Lawsuit**

On or about June 3, 2004, Vernon Joseph Irvin sued The Place and Mr. Duane Jones in the Court of Common Pleas for Philadelphia County for injuries allegedly sustained by Mr. Irvin as a result of an assault and battery that occurred on June 7, 2002. The complaint alleged that on that date, while Mr. Irvin was a business invitee at The Place, Duane Jones entered The Place for the sole purpose of assaulting, battering, and shooting Mr. Irvin. While in The Place, Mr. Jones shot Mr. Irvin a total of six times. Mr. Irvin's complaint alleged, *inter alia*, that his injuries and losses due to the shooting were the result of the willful, careless, and negligent conduct of The Place.[1]

---

[1] The underlying complaint, in relevant part, reads:
> 15. The assault upon Plaintiff, Vernon Joseph Irvin, and the injuries, damages and losses suffered by Plaintiff, more fully set forth hereinafter were the direct and proximate result of the willful, wanton, careless and negligent conduct of Defendant, The Place, acting by and through its duly authorized agents, servants, workmen or employees, consisting of the following:
> a) Failing to supervise the premises and, in particular, the conduct of patrons who Defendant, The Place, knew, or in the exercise of reasonable care, should have known posed a threat and risk to persons such as Plaintiff, Vernon Joseph Irvin;
> b) Failing to warn Plaintiff that individuals of known intemperate and vicious habits frequented the premises which posed a risk and threat to other persons, including Plaintiff;
> c) Failing to have adequate personnel present to supervise the behavior of patrons of Defendant;
> d) Failing to effectuate and enforce policies to remove from the premises individuals whom Defendant, The Place, knew posed a risk of harm to individuals, including Plaintiff; and
> e) Failing to properly train its employees;
> f) Failing to provide adequate security;

Mr. Irvin's Complaint was served upon The Place on June 23, 2004. A judgment of default was subsequently entered against The Place on October 14, 2004 for failure to answer or otherwise respond to the complaint. There is no indication that the parties have attempted to reopen the judgment. When 65 Bog did submit its claim to Alea London, Alea London denied it based upon the assault and battery exclusion contained in the Policy.[2]

On March 4, 2005, Alea London filed a complaint in this Court seeking a declaratory judgment that it was neither under any duty to defend or indemnify 65 Bog, nor to pay Mr. Irvin's damages, in connection with the underlying lawsuit. The Insured answered the complaint, and, subsequently, Alea London filed its motion for judgment on the pleadings, requesting that the Court find that, pursuant to the terms of the Policy, Alea London is under no duty to defend 65 Bog against Mr. Irvin's suit, which 65 Bog and Mr. Irvin both oppose. Thereafter, 65 Bog filed its motion for partial summary judgment, requesting that the Court find that Alea London did have a duty to defend it against Mr. Irvin's claims. Counsel here presented oral arguments on the issues at hand.

---

g) Failing to recognize clear and present dangers to its patrons such as Plaintiff;
h) Failing to properly screen its patrons;
i) Failing to effectuate policies and procedures to protect its patrons from unlawful behavior of other patrons.

16. As the direct and proximate result of Defendant, The Place's negligence, Plaintiff suffered the injuries and losses described herein-above.

[2] Alea London contends that 65 Bog did not provide proper notice of the underlying lawsuit until after the default judgment was entered, a contention which 65 Bog denies.

4

## II.  DISCUSSION

### A.  Judgment on the Pleadings and Summary Judgment Standards

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed but within such time so as not to delay the trial, any party may move for judgment on the pleadings." Judgment on the pleadings will not be granted unless the movant clearly establishes that there are no material issues of fact, and that he or she is entitled to judgment as a matter of law. Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 219-20 (3d Cir. 2005).  In deciding a motion for judgment on the pleadings, a court must view the facts presented in the pleadings and draw any inferences therefrom in a light most favorable to the nonmoving party.  Id.  If matters outside the pleadings are presented to and not excluded by the court on a motion for judgment on the pleadings, the motion shall be treated as one for summary judgment and disposed of as provided in Federal Rule of Civil Procedure 56.  FED. R. CIV. P. 12(c).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law.  Id.

A party seeking summary judgment always bears the initial responsibility to inform the district court of the basis for the motion and to identify those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Where the non-moving party bears the burden of proof on a particular issue at

5

trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented in the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255; USX Corp v. Liberty Mut. Ins. Co., Nos. 04-1277 & 04-1300, 2006 U.S. App. LEXIS 8702, at *12-13 (3d Cir. Apr. 10, 2006).

### B. The Duty to Defend

Under Pennsylvania law, the insurer has a duty to defend its insured when the allegations contained in the complaint against the insured could potentially fall within the coverage of the policy. Air Products & Chemicals, Inc. v. Hartford Accident & Indemnity Co., 25 F.3d 177, 179 (3d Cir. 1994) (citing Gedon v. State Farm Mut. Auto. Ins. Co., 188 A.2d 320, 321-22 (Pa. 1963)). As long as some of the allegations against the insured are covered by the policy, the insurance company must defend the entire action. See, e.g., Essex Ins. Co. v. V.A.C.V., Inc., No. 98-1046, 1998 U.S. Dist. LEXIS 8800, at *3 (E.D. Pa. June 9, 1998). "To determine whether a claim may potentially come within the coverage of an insurance policy, the Court must ascertain the scope of the insurance coverage, and then analyze the allegations in the complaint." Sphere Drake, P.L.C. v. 101 Variety, Inc., 35 F. Supp. 2d 421, 427 (E.D. Pa. 1999). If, however, the Court determines that "there is no possibility that any of the underlying claims could fall within

the coverage of the policy, then the insurer had no duty to defend and indemnify." Id. at 428.

Here, Alea London contends that it does not have a duty to defend 65 Bog because there is no coverage under the Policy for the claims asserted in the underlying Irvin complaint in that the shooting on June 7, 2002 (1) was not an "occurrence" as defined in the policy, and/or (2) is excluded under the assault and battery exclusion.[3]

### 1. Coverage for an "Occurrence"

The Policy provides that it covers claims of bodily injury only if it is caused by an "occurrence," which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  Alea London argues that it has no duty to defend 65 Bog because the factual allegations in the underlying Irvin complaint do not describe an "occurrence" as required by the Policy.  That is, Mr. Irvin alleged in his complaint against 65 Bog that Mr. Jones entered The Place for the "sole purpose" of shooting him.  Alea London asserts that the word "accident" in the definition of "occurrence" cannot be read to include the incident as pled in the underlying Irvin complaint because it was a purposeful act and not an unforeseen event or circumstance.  Thus, concludes Alea London, because there was no "occurrence," there can not be any coverage under the Policy.

In opposition, 65 Bog argues that the incident was an "occurrence" within the language of the Policy because it was unexpected and not intended by the premises owner.  The Insured asserts that, under Pennsylvania law, the fact that an event causing bodily injury may be traceable to the intentional act of a third party does not preclude the "occurrence" from being an "accident" within the meaning of an insurance policy.

---

[3] Alea London also argues that coverage should be denied because of the punitive damages exclusion contained in the Policy.  The Court does not reach this issue due to its ruling on the assault and battery exclusion.

7

In support of its position, 65 Bog cites <u>Nationwide Mutual Fire Ins. Co. v. Pipher</u>, 140 F.3d 222 (3d Cir. 1998).  In that case, the Third Circuit Court of Appeals held that injuries that were inflicted by the intentional act of a third party, but that they were also attributable to the negligent acts of the insured, constituted an "occurrence" under an insurance policy that defined "occurrence" as an "accident."  <u>Id.</u> at 223.  In <u>Pipher</u>, the insured owner of an apartment building removed and negligently failed to reinstall the doors to a tenant's apartment.  <u>Id.</u>  The insured owner later hired a third party to paint the building, and that worker killed the occupant of the apartment with the missing doors.  <u>Id.</u> at 224.  Thereafter, the victim's husband instituted a wrongful death action against the owner.  <u>Id.</u>

The insurer argued that it did not have a duty to indemnify the insured inasmuch as the victim's death was caused by an intentional assault, which could not be an "occurrence," because that term was defined in the policy as an "accident."  The Court of Appeals rejected that argument and held that because the test for whether the injury is caused by an "accident" is taken from the perspective of the insured,  "an occurrence, as used in a liability insurance policy, includes a plaintiff's bodily injury or death that is the direct result of the intentional act of a third party when the injury or death is also attributable to the negligence of the insured."[4]  <u>Id.</u> at 226-27; see also <u>Donegal Mutual Ins. Co. v. Baumhammers</u>, 2006 Pa. Super. 32, 26 (Pa. Super. Ct.

---

[4] Alea London attempts to distinguish <u>Pipher</u> on its facts, submitting that, in that case, the underlying complaint alleged that the insured's own negligence also played a significant part in the death.  Alea London asserts that a review of the underlying Irvin complaint here shows that there is no such allegation in that the claims relating to 65 Bog's negligence are general, and there is no allegation that 65 Bog did or did not do anything to facilitate the shooting of Mr. Irvin.
    The Court cannot agree that Alea London has sufficiently distinguished <u>Pipher</u>.  Here, Mr. Irvin, in his underlying complaint, specifically alleges that the negligent acts and omissions of 65 Bog caused his injuries.  See *supra* note 1; <u>Britamco Underwriters, Inc. v. Weiner</u>, 636 A.2d 649, 652 (Pa. Super. Ct. 1994).

8

2006) ("[W]e hold[] that negligence leading to intentional acts may nevertheless be considered an 'accident,' and thus an 'occurrence' where so defined.").[5]

The court in Pipher held that an "occurrence" includes the intentional act of a third party when the injury is also attributable to the negligence of the insured because, from the perspective of the insured, such a situation is an "accident." Here, Mr. Irvin, in his underlying lawsuit, alleged that his injuries were caused by the intentional acts of Duane Jones that came to pass as a result of the negligence of 65 Bog. Thus, the Court finds that the shooting of Mr. Irvin in the Place on June 7, 2002 constitutes an "occurrence" within the meaning of the Policy.

That the shooting was an "occurrence" within the meaning of the Policy does not necessarily lead the Court to conclude that Alea London had the duty to defend 65 Bog in the underlying lawsuit. For the reasons stated more fully below, the Court finds that, despite the incident being an "occurrence," Alea London was under no obligation to defend 65 Bog because the Policy's assault and battery exclusion applies to the incident here.

### 2. The Assault and Battery Exclusion

After a determination is made that a particular claim falls within the insuring agreement, the next analytical step is to determine whether coverage is nonetheless excluded by a policy provision. The Alea London Policy's assault and battery exclusion provides that the insurance policy excludes from coverage:

---

[5] Alea London urges the Court to rely on Britamco Underwriters, Inc. v. Grzeskiewicz, 639 A.2d 1208 (Pa. Super. Ct. 1994), to find that the June 7, 2002 incident was not an "occurrence." The Court declines to follow Grzeskiewicz to the extent that it conflicts with Pipher in holding that there could not be an "occurrence" if the underlying conduct is intentional, despite allegations of negligence against the insured, particularly in light of the recent Pennsylvania Superior Court decision in Donegal Mutual Ins. Co. v. Baumhammers, 2006 Pa. Super. 32, 27 (Pa. Super. Ct. 2006) (abandoning holding of Grzeskiewicz that there is no "occurrence" if underlying act was intentional, even if negligence of insured alleged).

9

> a. "Bodily Injury" or "Property Damage";
> (1) Expected or intended from the standpoint of any insured; or
> (2) Arising out of an assault or battery, provoked or unprovoked, or out of any act or omission in connection with prevention or suppression of an assault or battery, committed by any insured or an employee or agent of the insured.

Alea London argues that Mr. Irvin's claims arise from the bodily injury inflicted from the shooting (an "assault and battery") and 65 Bog's alleged failure to prevent it, and, as such, those claims are not covered under the Policy because they fall within the second enumerated provision in the Policy's assault and battery exclusion.

The interpretation of an insurance policy is a question of law properly decided by the court. Medical Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999); Standard Venetian Blind Co. v. American Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983). In Pennsylvania, a court construes insurance policy ambiguities strictly against the insurer. USX Corp v. Liberty Mut. Ins. Co., Nos. 04-1277 & 04-1300, 2006 U.S. App. LEXIS 8702, at *15 (3d Cir. Apr. 10, 2006); Selko v. Home Ins. Co., 139 F. 3d 146, 152 n.3 (3d Cir. 1998) (citing Standard Venetian Blind Co. v. Am. Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983)). However, "[c]lear policy language . . . is to be given effect, and courts should not torture the language to create ambiguities but should read the policy provisions to avoid it." USX Corp., 2006 U.S. App. LEXIS 8702, at*15 (quoting Selko, 139 F.3d at 152 n.3 (internal citations and quotations omitted)). A term shall be considered ambiguous "only if reasonably intelligent men, on considering it in the context of the entire policy, would honestly differ as to its meaning." State Farm Fire & Casualty Co. v. Bellina, 264 F. Supp. 2d 198, 202 (E.D. Pa. 2003).

65 Bog asserts that the Court should find that the assault and battery exclusion is

10

ambiguous and construe it against Alea London.  Specifically, 65 Bog argues that there is a "mysterious comma" in subparagraph (2) of the quoted exclusion which renders the remainder of the sentence beginning with the third "or" a "tautology."  65 Bog asserts that the provision could be "better understood" without the comma and should be read to exclude "Bodily Injury:"

> Arising out of an assault or battery, provoked or unprovoked, or out of any act or omission in connection with prevention or suppression of an assault or battery[] committed by an insured or agent of the insured.

Thus, 65 Bog argues that this alternate construction gives effect to the entire exclusion – bodily injury is excluded if it arises from an assault or battery or out of any act or omission in connection with the prevention or suppression of an assault or battery committed by any insured or agent of the insured.  In essence, 65 Bog would have the words "committed by an insured . . ." refer to the immediate preceding "assault and battery."  Thus, 65 Bog can only justify that construction by characterizing the comma as a grammatical mistake.  65 Bog asserts that this alternate reading of the provision excludes from coverage: (1) intentional acts of the insured causing injury to others; and (2) such things as "fighting between a bartender and patron, injuries caused by a 'bouncer', and also excludes the failure or neglect to prevent or suppress fighting and other negligent conduct of the insured or agent of the insured." (65 Bog Mot. at 6).

Alea London argues that the operative provision of the assault and battery exclusion as actually written, comma included, is not ambiguous and can be read sensibly in its entirety.[6]  Alea London asserts that the Policy's assault and battery exclusion, properly read, excludes

---

[6] In the underlying Irvin complaint, Mr. Irvin alleges that 65 Bog is liable for his injuries based on 65 Bog's (and its agents') failures in preventing and suppressing the assault by Mr. Jones.  Thus, the facts of the case only implicate the clause that excludes bodily injury arising out of "any act or omission in connection with prevention or suppression of an assault or battery, committed by any insured or an employee or agent of the insured."

11

bodily injury arising out of any act or omission committed by any insured or agent of the insured in connection with the prevention or suppression of (or failure to prevent or suppress) an assault or battery. Thus, concludes Alea London, the incident at The Place falls "squarely" into the exclusion because the default judgment against 65 Bog was premised upon the allegations of 65 Bog's negligence arising out of its acts or omissions in connection with the failure to prevent or suppress the assault and battery committed by Mr. Jones against Mr. Irvin.

The Court finds that the assault and battery exclusion contained in the Policy is not ambiguous as written and can be given its plain meaning. The assault and battery exclusion, in relevant part under the facts of this case, excludes bodily injury from "any act or omission in connection with prevention or suppression of an assault or battery, committed by any insured or an employee or agent of the insured." That exclusion can plainly be read to exclude claims based upon the acts or omissions of the insured (or its agent) in connection with the successful or unsuccessful efforts to prevent or suppress an assault or battery that is itself excluded from insurance coverage. To interpret the language as does 65 Bog would be to ignore the plainly placed comma by overlooking its grammatical function to set off a modifying clause (i.e., "committed by . . .") and "torture" it to create an ambiguity where one does not exist. Thus, the Court finds that the assault and battery exclusion as contained in the Policy is not ambiguous and can and should be read as written.

In the underlying lawsuit, all of Mr. Irvin's allegation against 65 Bog go to 65 Bog's acts or omissions in failing to prevent or suppress the assault that occurred.[7] Applying the assault and battery exclusion to the facts alleged in the underlying lawsuit, the Court finds that the exclusion would apply and coverage is precluded by that provision. Thus, the Court finds that because the

---

[7] See supra note 1.

assault and battery exclusion removes from coverage the acts and omissions of 65 Bog as alleged by Mr. Irvin, Alea London does not have a duty to defend or indemnify 65 Bog in the underlying Irvin lawsuit.

### III.  CONCLUSION

For the foregoing reasons, Alea London's Motion for Judgment on the Pleadings will be granted, and 65 Bog's Motion for Partial Summary Judgment will be denied.

An appropriate Order consistent with this Memorandum follows.


BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALEA LONDON LIMITED,** | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **65 BOG, INC., d/b/a THE PLACE, and** | : | |
| **VERNON JOSEPH IRVIN,** | : | |
| Defendants | : | NO. 05-1046 |

**ORDER**

AND NOW, this 19th day of April, 2006, upon consideration of Plaintiff Alea London Limited's Motion for Judgment on the Pleadings (Docket No. 13), the responses thereto, and Defendant 65 Bog's Motion for Partial Summary Judgment (Docket No. 20), it is hereby ORDERED that:

1. Plaintiff Alea London Limited's Motion for Judgment on the Pleadings (Docket No. 13) is GRANTED;

2. Defendant 65 Bog's Motion for Partial Summary Judgment (Docket No. 20) is DENIED; and

It is FURTHER DECLARED that Plaintiff has no duty to defend or indemnify its insureds in <u>Vernon Joseph Irvin v. Duane Jones and The Place</u>, Court of Common Pleas of Philadelphia County, May Term 2004, No. 4680.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge